BARNOT *v.* FORD MOTOR CO.

1. WORKMEN'S COMPENSATION—DECREASED EARNINGS—CAPACITY TO WORK—PARTIAL DISABILITY.

> Finding by department of labor and industry on petition for further compensation, treated as review of payments, that employee was receiving $18 a week less wages, hence entitled to $12 a week for partial disability *held*, erroneous in absence of showing of decreased capacity to work, since employer is not an insurer that employee's earnings will be maintained the same as before an injury.

2. SAME — DECREASED WAGES — PARTIAL DISABILITY — PROXIMATE CAUSE.

> Defendant employer cannot be required to make up difference between amount of weekly wages employee received prior to accident and weekly amount received subsequently from another employer where lesser wage is not shown to be attributable to the accident.

NORTH and BUSHNELL, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted June 15, 1937. (Docket No. 88, Calendar No. 39,375.) Decided November 10, 1937.

Tony Barnot presented his claim for compensation against Ford Motor Company for injuries sustained in defendant's employ. On petition for further compensation. Award to plaintiff. Defendant appeals. Award vacated.

*Clarence E. Moore,* for plaintiff.

*E. C. Starkey* and *W. J. Jones,* for defendant.

WIEST, J. Plaintiff, while in the employ of defendant, on February 5, 1930, sustained a contusion and fracture of the first metatarsal of his left foot. He was paid compensation in accordance with an agreement, approved March 7, 1930, at the rate of $18 per week, from the time of the injury to March 3, 1930, when he returned to work and was given light work for a short time, and then resumed his former employment of manual labor and so continued until laid off in the following summer.

In May, 1932, he was rehired and did work in the foundry, requiring him to be on his feet for eight hours a day. He made no complaint of his injured foot. A month after he was hurt and after he had returned to work he signed a settlement receipt. The receipt was never approved or disapproved. He was again laid off in October, 1932, and testified that he would have kept on working had it not been for the general lay-off at that time. In November, 1935, he petitioned for further compensation, claiming that his foot had become worse and that after he was laid off in October, 1932, he had done no work except around home. That was not true for he was

then in the employ of the Packard Motor Car Company as an oven tender in the core room and had been there since August 24, 1933, and had worked continuously there eight hours per day, at work requiring him to be on his feet, and he never complained of any trouble with his foot. After this was shown by the defendant, plaintiff recalled that he was working for the Packard Company and receiving a few cents more than $5 per day.

During the time he worked for defendant company, both before and after the injury, he received $48 per week.

The department treated the application as one of review of payments under an award by agreement and held:

"Plaintiff has met the burden of proof to show a loss of earning capacity since August 24, 1933, amounting to $18 per week, and is entitled to receive and recover compensation from the defendant in the sum of $12 per week for partial disability from August 24, 1933, until the further order of the department."

This found and measured his partial disability by decreased earnings rather than by capacity to work and made defendant an insurer required to make up the difference between what plaintiff earned before and after the accident. Such is not the test any more than mere inability to get work. The test to be applied is whether his injury has decreased his capacity to work as before and, therefore, he has earned less by reason of his physical disability and defendant should be made to respond for the loss occasioned by the injury.

We find no evidence that the lesser wage plaintiff received was in any way attributable to the accident. True, he earned less but, unless the decrease in earn

ings was occasioned by disability caused by the accident, defendant cannot be required to make up the difference.

The award is vacated, with costs.

Fead, C. J., and Butzel, Sharpe, Potter, and Chandler, JJ., concurred with Wiest, J.

North, J. (*dissenting*). The petition before us for review is one for further compensation, and "such relief as he (petitioner) is entitled to under the workmen's compensation law of Michigan." At the hearing the department treated the proceedings as one for "review of payments and (to) ascertain what amount, if any, plaintiff was entitled to receive under the award." Prior to the filing of this petition the parties had entered into an agreement for compensation to which he was entitled as a result of his injury on February 5, 1930. This agreement for compensation provided:

"The employee's average weekly wage being $48 it is agreed, that compensation be paid at the rate of $18 per week, during total disability, and at the proper rate per week during partial disability if he becomes legally entitled to compensation for partial disability."

Plaintiff was paid compensation for a short time and then was returned to his employment but at light work. The settlement receipt entered into by the parties was not approved by the department of labor and industry. With some lay-off plaintiff continued in defendant's employ until October 6, 1932, at which time he was permanently released from defendant's employment. He was without employment thereafter until August 24, 1933, at which time he entered the employ of the Packard Motor Car

Company where he remained until the time of the hearing, at a weekly wage of approximately $30.

In November, 1935, plaintiff filed this petition and upon review before the department he was awarded for partial disability $12 per week, commencing August 24, 1933, such compensation to continue until the further order of the department.

The question presented on this appeal is whether this award is supported by any testimony tending to show partial disability of plaintiff as a result of his injury. We think there is such testimony. Dr. William J. Cassidy, a witness for defendant, testified:

"It is possible he (plaintiff) probably would have some damage to the proximal ends of the metatarsal at the time. Usually the soft tissue becomes damaged from the result of the injury, as a rule. They heal, the arch becomes fairly firmly fixed, it doesn't do much damage. It shouldn't give him any pain if it is firmly fixed. There is nothing between the metatarsal and tarsal arch to firmly fix it.

"Q. (on cross-examination) Doctor, his condition in the arch and in the toe could cause pain, couldn't it?

"A. Yes. The question of pain is an individual problem, it varies in individuals, pain is a personal problem. * * *

"Q. If he stood on his feet for a number of hours and didn't have the proper support on there, wouldn't he have discomfiture and pain in that foot, if he didn't have the support?

"A. Well, he is apt to, yes, if he has had an arch that has been damaged, if the thing isn't supported he is more apt to have pain, yet. * * *

"Q. And of course the soft tissues down in there that were injured at the time of this accident could be causing pain?

"*A.* Yes, it could. * * * As I say, at the time I saw him, of course, I didn't know how long he was on it. He didn't have very much swelling the day I saw him, very little swelling around the joints. The arch was down, of course."

Dr. T. I. Bergman, who examined plaintiff shortly before the hearing, as a witness for plaintiff testified:

"Examination disclosed a left foot that was scarred on the dorsal surface and atrophy of the great toe of the left foot, and a flat arch and tenderness over the metatarsal arch. The conclusion was that as a result of the accident he told me he had sustained, the ligaments had been pulled out and let his arch down. * * *

"*Q.* And would he be disabled in standing on his feet continuously?

"*A.* I think he would, because those ligaments have been pulled out of normal relationship, and it doesn't hold the bones of the arch in a normal position, and that will cause pain, and the longer he stands on it the more pain he will have. * * *

"*Q.* What disability has this man in the general field of common labor?

"*A.* As he is now it is probably difficult for him to be on his feet for any length of time. It would be pretty hard to estimate a percentage, although I should say anywhere from 35 to 50 per cent.

"*Q.* And this disability you found is the result of the accident?

"*A.* Yes."

Dr. I. W. Ruskin, another witness in behalf of plaintiff, testified:

"And that he (plaintiff) has a disturbed circulation of the left foot, which has prevented proper repair, and which in itself can also be a disturbing element in the foot. It was my further opinion that this disturbed circulation was associated with the

trauma that he had received. The patient has a disability in the field of general labor because of his inability to be on his feet continuously. He could do sitting down work, or work that would permit him alternately to sit or stand. * * * I think his explanation that he gave would be one that I could go along with. That is, that he had a great deal of disability while he did that (continued to work after the injury), but as we do know from experience, men will go through a lot of hardship and suffering for the sake of keeping down a job, and I believe at this time if he were given that kind of a job he would perhaps make every effort to keep up with the work.

"*Q*. How much disability has he in the general field of common labor?

"*A*. Well, as I mentioned, his disability would be due to his inability to be on his feet continuously, and it would be rather difficult to make any percentage of disability in this case. I would say, setting an arbitrary percentage, his disability is about one-third or a half in the general field of labor, based on his inability to be on his feet continuously.

"*Q*. Doctor, would he be able to use a sledge hammer weighing 25 pounds, breaking slag and working around the slag (plaintiff's former employment with defendant)?

"*A*. Well, I believe that would be pretty hard work for a man who has a bad foot."

In the light of the foregoing testimony it cannot be said that the award to plaintiff of $12 a week for partial disability is wholly without evidentiary support. If supported by some testimony, we are bound by the department's determination of issues of fact, and the award made by the department should be affirmed.

In view of the record quoted above, I think this court would not be justified in holding, as is stated in Justice WIEST's opinion:

"This (the award of $12 per week) found and measured his partial disability by decreased earnings rather than by capacity to work."

The opinion of the department does not so state. It is true that $18 per week is approximately the difference in plaintiff's earnings while employed by defendant and his earnings when later employed by the Packard Motor Car Company; but the inference does not follow that therefore the department made this the measure of compensation awarded. The testimony hereinbefore quoted is ample to support the conclusion that at the time this petition was filed plaintiff's earning capacity was impaired to such extent as would fully justify the award made by the department for partial disability. It should be affirmed, with costs to appellee.

BUSHNELL, J., concurred with NORTH, J.